# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL CASE NO: 3:07-CV-219-DCK

| | | |
|---|---|---|
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| PERRY T. NIXON, JR. and CAROL P. NIXON, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**THIS MATTER IS BEFORE THE COURT** on the "Motion for Summary Judgment" (Document No. 18) filed on March 30, 2009, by the United States Postal Service ("U.S. Postal Service"). Perry T. and Carol P. Nixon ("Nixons") oppose the motion. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this matter is ripe for consideration. On June 16, 2009, the undersigned Magistrate Judge held a hearing at which the parties, through counsel, presented oral arguments. Having carefully considered the record, including the parties' briefs, the evidence and arguments at the hearing, and the applicable authority, the undersigned will **grant** the motion for the following reasons:

## I. BACKGROUND AND PROCEDURAL HISTORY

On May 30, 2007, the U.S. Postal Service filed this action in federal court pursuant to 39 U.S.C. § 409(a), seeking specific performance of an option to purchase certain real estate at a fixed

price.[1]  Specifically, the U.S. Postal Service asks the Court to order the Nixons to sell, transfer, and convey title to the real property known as the Main Post Office at Folly Beach, based upon the "Option to Purchase" contained in the lease of this premises.  (Document No. 1, p. 5).  The Nixons have counterclaimed for a declaration that the Option to Purchase is no longer valid or enforceable.  (Doc. No. 7, p. 5).  The U.S. Postal Service has moved for summary judgment, and the parties have fully briefed and orally argued their respective positions.

The parties do not dispute the essential facts of this case, but differ on the legal significance of a subsequent lease of the real property at issue.  The U.S. Postal Service first entered a ten-year lease (the "1977 Lease"), effective June 22, 1977, with M & H Contracting Services, Inc. ("M & H") for the premises known as the Main Post Office at Folly Beach, located in South Carolina.  M & H then conveyed the real estate, subject to this lease, to the Nixons for $85,000.00.  The Nixons were aware of the long-term lease and bought the property for the rental income it would generate. The 1977 Lease contained four renewal option periods of five years each.  The U.S. Postal Service opted to renew the 1977 Lease for each of the four renewal periods and has operated the premises continually as a post office since June 22, 1977.

The 1977 Lease also included various purchase options, including one that specified the U.S. Postal Service could purchase the real property on June 21, 2007 (the final day of the lease) for the agreed sum of $125,000.00.  (Document No. 1, Exh. 1).  This "Option to Purchase" required the U.S. Postal Service to notify the Nixons at least one year in advance of its intention to exercise the Option to Purchase.  The U.S. Postal Service timely did so in writing on April 12, 2006.

---

[1]The Postal Reorganization Act provides in relevant part that "[e]xcept as otherwise provided in this title, the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service."  39 U.S.C. § 409(a).

Prior to exercising this option, the U.S. Postal Service, through its real estate specialist Ruthann Coburn, sent a letter to the Nixons on January 27, 2005, in an effort "to secure a new lease well in advance of the lease expiration date to provide the Postal Service time to relocate should circumstances so require." (Document No. 18, Ex. 8). Although the Nixons initially indicated they did not wish to renew the lease further, they subsequently agreed to a month-to-month tenancy, to begin the day after the 1977 Lease expired. (*Id*., Exh. 7). The Nixons signed this "Second Lease" on February 3, 2005. The Second Lease would have allowed the U.S. Postal Service to continue operating the Folly Beach facility on a month-to-month basis at an increased rent and did not include a purchase option.

Subsequently, the U.S. Postal Service decided not to relocate this postal facility, and instead, exercised the Option to Purchase. After the U.S. Postal Service notified the Nixons in writing that it intended to exercise the Option to Purchase the real property, the Nixons refused to sell, arguing that the U.S. Postal Service had entered a Second Lease and should proceed under that contract. The U.S. Postal Service filed this action for specific performance. Hence, the Court must address the specific terms that the parties agreed upon and determine whether to order specific performance of the Option to Purchase.

## II. DISCUSSION

### A. <u>Standard of Review</u>

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Volvo Trademark Holding v. Clark Machinery Co.*, 510 F.3d 474, 481 (4th Cir. 2007); Fed. R. Civ. P.

56(c). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of pointing to the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 322. The non-moving party "may not rest upon the mere allegation or denials of his pleading [and] . . . must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The Court must construe the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Id.* at 255; *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 955 (2008).

## B. <u>Applicable Law</u>

The U.S. Postal Service asserts that "[c]ontracts to which the government is a party are normally governed by federal law." (Doc. No. 18, p. 8, citing *United States v. County of Allegheny*, 322 U.S. 174, 183 (1944)). The Nixons cite federal cases, as well as North Carolina and South Carolina law, for various well-settled principles of contract law. (Doc. No. 21 at 6-7). Although the parties have cited case law from different jurisdictions, the principles for the contract issues before the Court are the same. *See, e .g., Consolidated Gas Supply Corp. v. F.E.R.C.*, 745 F.2d 281, 284 (4th Cir. 1984) ("It is, of course, elementary that an unambiguous document controls, unaffected by contentions of one of the parties that he ... meant something else."), *cert denied*, 472 U.S. 1008 (1985); *Walton v. City of Raleigh*, 342 N.C. 879, 881 (1996) ("If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract."); *Ecclesiastes Prod. Ministries v. Outparcel Assocs., L.L.C.*, 374 S.C. 483, 499 (2007) ("If a contract's language is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and its language determines the instrument's force and effect.").

Moreover, "in the absence of a showing that state law conflicts with federal common law, a court may adopt state law in interpreting an agreement..." *F.D.I.C. v. Prince George Corp.*, 58 F.3d 1041, 1045 (4th Cir. 1995). "The fact that federal courts have the power to create federal common law applicable to Postal Service leases does not mean that they have to exercise that power. If state law would provide as good or better rules of decision, a federal court can apply state law instead of creating its own rules. This is a frequent choice, especially in real property law." *Powers v. U.S. Postal Service*, 671 F.2d 1041, 1043 (7th Cir. 1982); *and see, United States v. Epstein*, 27 F. Supp. 2d 404, 412 (S.D.N.Y 1998) ("while application of general federal contract law to Government contracts may be appropriate in certain instances, where ... the government contract is a lease for the use of real property, the adoption of state common law ...makes sense."); *and see, e.g.*, *Nationwide Postal Management v. United States*, 2000 WL 502619, *3 fn. 10 (D.Conn. 2000) (noting that "the outcome of the case would be same under either federal or state law"); *Spodek v. U.S. Postal Service*, 35 F.Supp.2d 160, 165 (D.Mass. 1999) (applying state law to post office lease). The Court will not belabor the choice-of-law issue further, as the relevant principles of contract law in the different jurisdictions lead to the same result in this instance.

### C. <u>Analysis</u>

The Nixons urge that "the Second Lease is an enforceable and binding agreement that, in effect, negated the purchase option contained in the First Lease." (Doc. No. 21 at 2). They acknowledge that when read separately, the two leases are clear and unambiguous. However, they contend that when read together, and considering the circumstances and communications that took place when the Second Lease was signed, there is a question of the intention of the parties. (Doc. No. at 6-7). The Nixons contend that the parties intended the Second Lease to extinguish the 1977

Lease, and that the Option to Purchase is therefore no longer in effect. (Doc. No. 6 at 8).

The U.S. Postal Service points out that "[t]he 2007 Lease did not refer to the 1977 Lease and did not cancel any provision thereof, including the Option to Purchase." (Doc. No. 18 at 5).  The U.S. Postal Service correctly asserts that a contract must be interpreted according to its plain language, and that extrinsic evidence of intent may be considered only when the contract language is ambiguous. *Consolidated Gas Supply*, 745 F.2d at 283-284 ("an unambiguous document controls, unaffected by contentions of one of the parties that he ... meant something else");  *Town of West Jefferson v. Edwards*, 74 N.C. App. 377, 382 (1985) ("An undisclosed intention is immaterial in the absence of mistake or fraud.").  Here, language reflecting the alleged intent to "extinguish the 1977 Lease" is simply not found anywhere in the Second Lease.  *Commercial Nat. Bank*, 226 N.C. at 426 (explaining that "[b]efore the new contract can be accepted as discharging the old, the fact that such was the intention of the parties must clearly appear").

"If the language of a contract 'is clear and only one reasonable interpretation exists, the courts must enforce the contract as written' and cannot, under the guise of interpretation, 'rewrite the contract or impose [terms] on the parties not bargained for and found' within the contract." *Crinder v. Jones Island Club, Inc.*, 147 N.C. App. 262, 266 (2001), *rev. denied*, 356 N.C. 161 (2002).  A court should look to extrinsic evidence only if the intent of the parties is unclear and ambiguous within the face of the document.  *Whirlpool Corp. v. Dailey Constr., Inc.*, 110 N.C. App. 468, 471 (1993).

Upon careful review of the language of each contract in the present case, the Court finds that the terms of the two leases are clear and unambiguous, even when read together.  The key point is that the Second Lease, by its express terms, did not commence until the 1977 Lease expired.  Thus,

the Court cannot accept the Defendants' contention that, when read together, the two leases are ambiguous. Very simply, the Second Lease did not extinguish and replace the 1977 Lease, either expressly or impliedly, in 2005. By its terms, it would not have come into effect until 2007. As the U.S. Postal Service opted to purchase the property instead, the month-to-month tenancy never became operative.

The facts of the case confirm this reading of events. The U.S. Postal Service paid rent to the Nixons at the rate negotiated under the 1977 Lease until that contract expired on June 21, 2007. (Doc. No. 18 at 8-9). The parties negotiated an increased monthly rent under the Second Lease, which by its express terms, would take effect on June 22, 2007. The fact that the parties negotiated the Second Lease in advance and signed it in 2005 did not create any ambiguity as to the parties' intent regarding the date of commencement of the Second Lease. Its terms plainly indicate that it would not take effect until the 1977 Lease expired. "The making of a second contract dealing with the subject matter of an earlier one does not necessarily abrogate the former contract." *Commercial Nat. Bank of Charlotte v. Charlotte Supply Co.*, 226 N.C. 416, 426 (1946).[2]

To "substitute" for the earlier contract, as urged by the Nixons, the second contract "must either deal with the subject matter of the former contract so comprehensively as to be complete within itself and to raise the legal inference of substitution, or it must present such inconsistencies with the first contract that the two cannot in any substantial respect stand together." *Id,* (citations omitted). In the present case, the express terms of the leases do not conflict. The 1977 Lease clearly

---

[2]The substitution of a new contract or obligation for an old one which is thereby extinguished is known as a novation. *Wachovia Realty Investments v. Housing, Inc.*, 292 N.C. 93, 104 (N.C. 1977). The "question of novation is one of law for the courts." *Bowles v. BCJ Trucking Services, Inc.*, 172 N.C. App 149 (2005).

states the dates for the renewal periods and the expiration date of the Lease. (*See* Doc. No. 18, Exh. 1). The Second Lease clearly and unambiguously states that it commences on June 22, 2007, the day after the expiration of the 1977 Lease. (*See* Doc. No. 18, Exh. 7 at 1). The Second Lease does not refer to the 1977 Lease or indicate that it is replacing or invalidating the 1977 Lease. When examining the beginning and expiration dates specified in each contract, the Court finds that the two contracts were plainly intended to stand separately in succession. The Second Lease does not concern the same time period as the 1977 Lease and does not indicate that it was meant, as of 2005, to "substitute" for the 1977 Lease. The two contracts do not involve inconsistencies indicating "that the two cannot in any substantial respect stand together." *Commercial Nat. Bank*, 226 N.C. at 426.

"When the language of a contract is plain and unambiguous, its interpretation is a question of law for the court to decide, not for the jury, and summary judgment is proper." *Crawford v. Potter*, 2005 WL 2452092, at *3 (M.D.N.C. Oct. 4, 2005) (citations omitted). The Court finds that each contract is clear and unambiguous on its own and that the Second Lease is not inconsistent with the first. Even when read together, no ambiguity exists. Thus, the Court need not consider extrinsic evidence regarding the alleged intent of the parties. *Cleland v. Children's Home, Inc.*, 64 N.C.App. 153. 156 (1983); *Whirlpool Corp.*, 110 N.C. App. at 471. "Where the language used in the contract is clear and unambiguous, the intention of the parties is to be gathered from the face of the contract." *Augusta Homes, Inc. v. Feuerstein*, 2009 WL 2501399, *3 (N.C.App. 2009).

In accordance with the terms of the renewed 1977 Lease, the U.S. Postal Service timely exercised its Option to Purchase at least one year before the lease expired. (Doc. No. 18, Exh. 11). Although the Nixons seek to avoid the express terms of their bargain with the U.S. Postal Service under the renewed 1977 Lease, application of well-established principles of contract law requires

the Court to uphold the parties' bargain, as reflected in the express language of the 1977 Lease and the Option to Purchase. The Option to Purchase is valid and enforceable.[3] The U.S. Postal Service is entitled to an order of specific performance of the fixed-price option it timely exercised. *See, e.g., Texaco, Inc. v. Creel*, 310 N.C. 695, 707 (1984) (ordering specific performance of fixed-price option). The Nixons have not raised the existence of any genuine issue of material fact as a matter of law.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's "Motion for Summary Judgment" (Doc. No. 18) is **GRANTED**.

Signed: August 31, 2009

David C. Keesler
United States Magistrate Judge

---

[3]It is briefly noted that the rule against perpetuities does not apply here. N.C. Gen. Stat. § 41-29 (2009). The Option to Purchase was exercised within thirty years and is subject to a statutory exception for options held by lessees. (*Id.* "this section does not apply to an option . . . held by a lessee to . . . purchase the leased premises. Such options . . . do not deter the lessee from making improvements on the property, and so public policy is not viewed as requiring controls on their duration.").